## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN A. CUTONILLI,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **CIVIL NO. JKB-15-629** |
| | * | |
| **STATE OF MARYLAND,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

John Cutonilli ("Plaintiff") brought this *pro se* action against the State of Maryland

("Defendant"), challenging certain provisions of the Maryland Criminal Code as amended by the

Firearm Safety Act of 2013, Md. Code Ann., Crim. Law §§ 4-301 to -306 ("FSA").  Specifically,

Plaintiff alleges that the FSA violates his rights under the Second Amendment and the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as

Article 28 of the Maryland Constitution's Declaration of Rights.

Now pending before the Court is Defendant's Motion to Dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) (ECF No. 5), filed on April 8, 2015.[1]  The issues have been

briefed (ECF Nos. 5–1, 7), and no hearing is required, Local Rule 105.6 (D. Md. 2014).  For the

---

[1] The Court notes that Defendant has not moved to dismiss these claims against the "State of Maryland" under the Eleventh Amendment.  This is puzzling.  While the suit seeks only declaratory and injunctive relief, it does so against the State proper and not against some official thereof.  Thus, it would seem to fall outside the bounds of the *Ex parte Young* exception to state sovereign immunity, *see* 209 U.S. 123, 159-60 (1908) (recognizing that where a state official seeks to enforce a state law that violates the Federal Constitution, the official "comes into conflict with the superior authority of that Constitution, and he is . . . stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct").  Regardless, however, such immunity must be affirmatively invoked by the State in order for a suit to be disabled.  It is not the Court's role to raise the immunity bar on its own motion.

reasons explained below, Defendant's Motion to Dismiss will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, and the case will be otherwise STAYED pending the decision of the United States Court of Appeals for the Fourth Circuit in *Kolbe v. Hogan*, No. 14-1945.[2]

## I. Statutory Overview

The FSA, enacted in the wake of a horrific elementary school shooting in Newtown, Connecticut, imposes a general ban on the transportation, possession, purchase/sale, and transfer/receipt of certain assault weapons.  Md. Code Ann., Crim. Law § 4-303.  The law further prohibits the manufacture, purchase/sale, and transfer/receipt of detachable magazines with capacities in excess of ten rounds ("Large Capacity Magazines" or "LCMs").  *Id.*  § 4-305.  The FSA's restrictions do not apply to members of the United States Armed Forces, the National Guard, or state and local law enforcement personnel carrying out their official duties.  *Id.* § 4-302(1).  The FSA includes an exemption for law enforcement retirees in good standing, permitting them to possess assault weapons and LCMs that they acquired during the course of their service or upon retirement.  *Id.* § 4-302(7).  A person who violates the FSA is guilty of a misdemeanor, punishable by up to three years in prison and/or a fine not exceeding $5000.  *Id.* § 4-306(a).

Plaintiff, a resident of Maryland, maintains that he is a member of the "unorganized militia under state and federal laws."  (ECF No. 1 at 3).[3]  Plaintiff wishes to purchase prohibited weapons and LCMs "so that he may bring them to militia duty if called upon by the Governor or

---

[2] The case caption changed on appeal, as the Fourth Circuit substituted the current Governor of Maryland, Lawrence J. Hogan, Jr., for the former Governor, Martin O'Malley.

[3] The Maryland Code defines two classes of state militia:  the "organized militia" (*i.e.*, the National Guard and Maryland Defense Force) and the "unorganized militia" (*i.e.*, most other able-bodied citizens of the state).  Md. Code Ann., Pub. Safety §§ 13-202, -203.  The United States Code draws a similar distinction between the "organized militia" (*i.e.*, the National Guard and Naval Militia) and the "unorganized militia" (*i.e.*, most other able-bodied male citizens between ages 17 and 45).  10 U.S.C. § 311.

the President." (*Id.* at 4.)  Accordingly, Plaintiff brought this action under 42 U.S.C. § 1983,

seeking a declaratory judgment that the FSA violates the Second Amendment and the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as

Article 28 of the Maryland Constitution's Declaration of Rights.  Plaintiff requests an order

enjoining Defendant from administering and enforcing the FSA.

Defendant moved to dismiss.  (ECF No. 5.)

## II.  Legal Standard

A motion to dismiss constitutional claims, like any motion filed under Federal Rule of

Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint.  The Court must determine

whether Plaintiff has pleaded "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In conducting its analysis, the Court views all

well-pleaded allegations in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120

F.3d 472, 474 (4th Cir. 1997).  However, as the *Twombly* opinion noted, "Factual allegations

must be enough to raise a right to relief above the speculative level . . . ."  550 U.S. at 555.  "A

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*,

550 U.S. at 555, 557).  A plaintiff filing *pro se* is held to a "less stringent standard[]" than is a

lawyer, and the court must construe *pro se* claims liberally, no matter how "inartfully pleaded."

*Erickson v. Pardus,* 551 U.S. 89, 94 (2007).  However, even a *pro se* complaint must meet a

minimum threshold of plausibility.  *Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-

3799, 2013 WL 6207836, at *2 (D. Md. Nov. 27, 2013).

### III.  Analysis

#### A.  Second Amendment (Counts I–II)

Plaintiff alleges that the FSA is unconstitutional, both facially and as applied,[4] averring that its restrictions on assault weapons (Count I) and LCMs (Count II) violate the right "to keep and bear arms as guaranteed by the Second Amendment."  (ECF No. 1 at 8.)  In this regard, Plaintiff's Complaint is strikingly similar to that in another case already decided in this District, *Kolbe v. O'Malley*, 42 F. Supp. 3d 768 (D. Md. 2014).  In *Kolbe*, Judge Blake held that the FSA withstands Second Amendment scrutiny.  Plaintiff contends, however, that his case is distinct from *Kolbe* because he challenges the FSA "based upon militia interests" rather than self-defense interests.  (ECF No. 1 at 3.)[5]

Plaintiff has pleaded a distinction without a difference.  In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court made clear that the right protected by the Second Amendment is an "individual right to possess and carry weapons in case of confrontation." While the Amendment's prefatory clause announces the purpose for which the "ancient right" was *codified*, that is, to preserve the militia,[6] self-defense is the "*central component* of the right itself."  *Id.* at 599 (emphasis in original).  The *Heller* majority flatly rejected the dissenting Justices' theory that "individual self-defense is merely a 'subsidiary interest' of the right to keep and bear arms," characterizing that premise as "profoundly mistaken."  *Id.*; *see also United States v. Smoot*, 690 F.3d 215, 220 (4th Cir. 2012) ("In . . . *Heller*, the Supreme Court identified

---

[4] Plaintiff alleges that the FSA infringes "the right of the people of Maryland, including [Plaintiff], to keep and bear arms."  (ECF No. 1 at 8.)  However, since Plaintiff does not purport to represent a class, and since a litigant must ordinarily "assert his own legal rights and interests" rather than the rights of third parties, *Warth v. Seldin*, 422 U.S. 490, 499 (1975), the Court will construe Plaintiff's as-applied challenge as relating to his individual rights.

[5] In his Complaint, Plaintiff challenges some of the data presented in *Kolbe*.  At this stage in the proceedings, because the Court takes all of Plaintiff's well-pleaded allegations as true, *Ibarra*, 120 F.3d at 474, it will not comment on the merits of Plaintiff's factual dispute.

[6] The prefatory clause states that a "well regulated Militia" is "necessary to the security of a free State," while the operative clause affirms that the "right of the people to keep and bear Arms[] shall not be infringed."

an individual right to keep and bear arms embodied in the Second Amendment, without any connection to militia service.").  After *Heller*, it is settled that the Second Amendment right is an individual, defensive right, and Plaintiff's effort to carve out a discrete militia interest is unavailing.

Plaintiff's Second Amendment allegations must therefore stand or fall on the same legal ground as the claims presented in *Kolbe*.  There, Judge Blake explained that the Fourth Circuit has established a two-prong inquiry for evaluating Second Amendment claims.  "First, the court determines whether the challenged law 'imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.'"  42 F. Supp. 3d at 783 (quoting *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013)).  "If the conduct does fall within the scope of the Second Amendment right, then the court must move to the second part of the inquiry and apply 'the appropriate form of means-end scrutiny.'"  *Id.* (quoting *Woollard*, 628 F.3d 875).

As to the first prong, the *Heller* Court offered some guidance concerning the outer bounds of the Second Amendment right.  The Court wrote that the Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," and the Court further endorsed the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"  554 U.S. at 625, 627.[7]  Given these limitations, this Court is skeptical whether the Second Amendment right encompasses the weapons restricted by the FSA (semiautomatic assault rifles and pistols as well as detachable LCMs designed for ready replacement in combat scenarios).  That said, Plaintiff has pleaded that these restricted weapons are "commonly possessed throughout the United States by law-abiding, responsible persons for

---

[7] The *Heller* Court recognized that a twenty-first century militia might be more effective if equipped with "sophisticated arms that are highly unusual in society at large."  554 U.S. at 627.  But the Court explained that the "conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of *lawful weapons that they possessed at home* to militia duty."  *Id.* (emphasis added).

lawful purposes." (ECF No. 1 at 7-8.) At this stage in the proceedings, the Court must accept Plaintiff's factual allegations as true—and without any binding precedent on point, the Court cannot dismiss Plaintiff's claims on their face as falling outside the scope of Second Amendment protection.[8]

Nor can the Court dismiss Plaintiff's claims on the second prong of the *Woollard* inquiry, *i.e.*, means-end scrutiny. For laws burdening the Second Amendment right outside of the context of "hearth and home," the Fourth Circuit has held that intermediate scrutiny is the appropriate standard of review. To survive such scrutiny, a law must be "reasonably adapted to a substantial governmental interest." *Woollard*, 712 F.3d at 876 (quoting *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011)). The Fourth Circuit has recognized that public safety and crime prevention are sufficiently substantial interests. *Id.* at 878. However, the Fourth Circuit has not yet reviewed the constitutionality of the FSA—and Plaintiff contends, with some factual content to support his claim, that there is "no reasonable rational basis" connecting the FSA with the State's public safety goals. (ECF No. 1 at 5.) The State does not rebut Plaintiff's claim in its Motion to Dismiss, and in any event, such a claim invites an evidentiary analysis that is premature at this stage in the proceedings.

Because Plaintiff has stated a Second Amendment claim under current law, the Court cannot dismiss Counts I–II outright. However, the State has moved in the alternative for a stay of this action pending the Fourth Circuit's review of the *Kolbe* case, and the Court is persuaded that a stay is appropriate under these circumstances. A final resolution in *Kolbe* may yield clarity on two central issues in this matter: (1) whether assault weapons and LCMs are

---

[8] The State devotes several pages of its memorandum in support of its Motion to Dismiss to an argument that "detachable ammunition magazines are not 'arms'" within the meaning of the Second Amendment. (ECF No. 5–1 at 11.) The State's support for this proposition seems rather scant, but the Court need not decide at this stage whether magazines definitively are or are not "arms."

commonly possessed for lawful purposes and (2) whether there is a reasonable fit between the FSA and the State's public-safety interests.[9]  The Supreme Court has long recognized that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  A stay here would seem to inflict no hardship on either party:  Plaintiff makes no allegation that he faces an imminent summons to militia service, and the Court is aware of no such trend in Maryland.  And since the Fourth Circuit will likely rule soon on matters dispositive of or at least highly pertinent to the key issues in this case, it seems prudent to postpone this litigation in anticipation of that ruling.[10]

Accordingly, the Court will deny without prejudice Defendant's Motion to Dismiss Counts I–II, and it will otherwise stay these proceedings until the Fourth Circuit issues a decision in *Kolbe*.

### B.  *Maryland Constitution (Count III)*

Plaintiff alleges that the FSA violates Article 28 of the Maryland Constitution's Declaration of Rights.  He further contends that Defendant's failure to follow its own laws violates due process under the Fourteenth Amendment.

Article 28 provides that a "well regulated Militia is the proper and natural defence of a free Government."  Unlike the Second Amendment, Article 28 makes no mention of a right to keep or bear arms.  Moreover, Maryland courts have explicitly held that the state constitution does not enshrine such a right.  *See, e.g.*, *Williams v. State*, 982 A.2d 1168, 1171 (Md. Ct. Spec.

---

[9] Both of these issues are addressed in the parties' briefs before the Fourth Circuit.

[10] Plaintiff notes that Judge Blake denied his motion to file an amicus brief in *Kolbe*, arguing that such denial shows there are "no overlapping claims" between the two cases.  (ECF No. 7 at 3.)  In fact, Judge Blake wrote that she did not find Plaintiff's brief, which consisted of "his interpretation of the Second Amendment and relevant precedents," useful to the disposition of the case before her.  42 F. Supp. 3d at 775 n.5.  Judge Blake's statement need not be read to suggest a dearth of overlapping claims:  on the contrary, because Plaintiff's theory of a distinct Second Amendment militia interest is disposed of by *Heller*, the two cases are materially identical in almost all respects.

App. 2009) ("[T]here is no Maryland corollary of the federal constitutional right codified in the Second Amendment."), *aff'd*, 10 A.3d 1167 (Md. 2011); *Scherr v. Handgun Permit Review Bd.*, 880 A.2d 1137, 1156 (Md. Ct. Spec. App. 2005) ("The Maryland Declaration of Rights is silent as to the right to bear arms.").[11]

Plaintiff separately complains that the FSA conflicts with Article IX, Section 1 of the Maryland Constitution, which instructs the General Assembly to "pass such Laws to promote Volunteer Militia organizations as may afford them effectual encouragement."  Plaintiff argues that the FSA "effectively bans the militia because it is no longer composed of the citizens of Maryland being able to bring firearms with them to militia duty."  (ECF No. 1 at 4.)  Clearly, the FSA does no such thing:  it simply identifies a subset of weapons that are generally unavailable to members of the unorganized militia.  Moreover, the requirement that the General Assembly afford "effectual encouragement" to volunteer militia organizations hardly prevents the Assembly from enacting reasonable firearms restrictions in the exercise of its police powers.

Because there is no right to bear arms under the Maryland Constitution, the Court will grant Defendant's Motion to Dismiss Count III.

### C. *Equal Protection (Count IV)*

Plaintiff finally alleges that the FSA violates the Equal Protection Clause of the Fourteenth Amendment, because the statute "exempt[s] certain individual members of the militia from [its] requirements, but the majority of the militia, including [Plaintiff], is not exempt." (ECF No. 1 at 9.)  It is true that the FSA exempts the National Guard (the "organized militia" under federal and state law) and law enforcement personnel (who may qualify as members of the

---

[11] *Williams* and *Scherr* both predated the Supreme Court's decision in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which held that the Fourteenth Amendment's Due Process Clause incorporates the Second Amendment right.  To the extent these state court opinions suggest that the Second Amendment does not constrain state governments, they are abrogated.  However, *McDonald* said nothing about the Maryland Constitution, and no Maryland state court has held that Article 28 encompasses a right to bear arms.

unorganized militia) from its restrictions.  *See* 10 U.S.C. § 311; Md. Code Ann., Pub. Safety § 13-202, -203.  It is also true that the FSA includes a special provision allowing law enforcement officers who retire in good standing to possess assault weapons and LCMs that they acquired either during their service or upon retirement.  Md. Code Ann., Crim. Law § 4-302(7).

But Equal Protection does not guarantee uniform treatment.  Rather, it directs that "all persons *similarly situated* should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (emphasis added).  To the extent that a legislature engages in line drawing, its laws are presumed to be valid and will generally be upheld if the underlying classifications are "rationally related to a legitimate state interest."  *Id.* at 440.[12]

Plaintiff has failed to sufficiently allege that he is similarly situated to the National Guardsmen and law enforcement officials who are exempt from the FSA's restrictions.  In particular, while Plaintiff claims that unorganized militia members have law enforcement authority under the United States Constitution when called into duty "and a standing duty under posse comitatus and the common law" (ECF No. 1 at 4),[13] Plaintiff nowhere alleges that the unorganized militia is generally subject to the rigorous training and oversight applicable to the exempt groups.  Addressing a similar Equal Protection argument, Judge Blake noted that "[i]n Maryland, law enforcement officers who wish to carry firearms must successfully complete . . . firearms classroom instruction, training, and qualification."  *Kolbe*, 42 F. Supp. 3d at 798.

---

[12] If this Court—or the Fourth Circuit—were to eventually hold that assault weapons and LCMs fall within the scope of the Second Amendment right, then the rational basis test would likely be replaced with some form of heightened scrutiny.  *Compare City of Cleburne*, 473 U.S. at 440 (prescribing strict scrutiny where "state laws impinge on personal rights protected by the Constitution"), *with Woollard v. Sheridan*, 863 F. Supp. 2d 462, 476 (D. Md. 2012) (describing ambiguity regarding the correct level of scrutiny for a Second Amendment Equal Protection challenge), *rev'd on other grounds*, 712 F.3d 865.  Conversely, if such weapons fall outside the Second Amendment's scope, the typical rational basis test would presumably continue to apply.  *Cf. United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (applying rational basis review to Equal Protection challenge by felon who had "no right—much less a fundamental right—to bear arms").  Regardless of the appropriate level of scrutiny, however, all Equal Protection cases require an antecedent determination that similarly situated persons have been treated differently.  Since Plaintiff fails to adequately allege that he is similarly situated to the exempt groups, in this case the Court need not determine the appropriate level of scrutiny for a well-pleaded Equal Protection claim.

[13] The Court makes no comment on the accuracy of Plaintiff's description of these militia duties.

Officers must receive "further specialized training to use assault weapons." *Id.*   National Guardsmen are likewise trained on proper use of firearms.[14]

The mere fact that Plaintiff could theoretically assume some law enforcement responsibilities in the vanishingly improbable event that he is summoned for militia duty hardly establishes that he is similarly situated to professional police and paramilitary forces.   Because the exempt groups are differently situated from Plaintiff, Count IV must be dismissed.

## IV.  Conclusion

For the foregoing reasons, an order shall enter GRANTING IN PART and DENYING WITHOUT PREJUDICE IN PART Defendant's Motion to Dismiss (ECF No. 5), and otherwise STAYING this action until such time as the Fourth Circuit rules in the *Kolbe* matter.

DATED this 28th day of September, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

[14] *See, e.g.*, Nat'l Guard Bureau, Dep'ts of the Army & the Air Force, *Army National Guard Training* (2009), http://www.ngbpdc.ngb.army.mil/pubs/350/350-1.pdf.